Walter T. Clark (SBN 53303)
Dan C. Bolton (SBN 104236)
WALTER CLARK LEGAL GROUP
A Professional Corporation
76-861 Highway 111
Rancho Mirage, CA  92270
Tel: (760) 862-9254
Fax: (760) 862-1121

Attorneys for Plaintiffs
ESTATE OF CLIFFORD W. MATHEWS, by and through successors in interest, CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant; CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant, individually

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF CLIFFORD W. MATHEWS, by and through successors in interest, CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant; CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant, individually.<br><br>Plaintiffs,<br><br>v.<br><br>SHERIFF CHAD BIANCO, in his individual and official capacities, COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; and DOES 1 through 10,<br><br>Defendants | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br>**1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);**<br>**2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);**<br>**3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);**<br>**4. Policies, Customs Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);**<br>**5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C.§ 1983)**<br>**6. Negligence – Wrongful Death;**<br>**7. Medical Negligence**<br>**8. Violation of California Government Code §845.6;**<br>**9. Violation of California Civil Code §52.1 (Tom Bane Act);**<br>**10. Declaratory Relief (28 U.S.C. § 2201)**<br><br>**DEMAND FOR JURY TRIAL** |

)<br>)<br>)<br>)

COMES NOW ESTATE OF CLIFFORD W. MATHEWS, by and through successors in interest, CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant; CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant, individually, and allege on information and belief the following;

## **INTRODUCTION**

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the in-custody death of pretrial detainee Clifford Mathews who died while in-custody of the Riverside County Sheriff's Department, Larry D. Smith Correctional Facility ("LDSCF") on September 27, 2024.  This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.      Clifford Mathews was a beloved member of his family.

3.      In 2022, eighteen (18) individuals died while incarcerated at the Riverside County Jails, the highest number for the County in the last fifteen (15) years. In response to these alarming numbers, the California Department of Justice launched an investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices resulting in the record-breaking in-custody deaths. The raw data and the per capita data make clear that the Riverside County Jails are a death sentence for any pretrial detainee.

4.      Indeed, in 2023, the Riverside County Jails continued to experience an alarming number of in-custody deaths, specifically sixteen (16) in-custody deaths, ranging from inmate-on-inmate violence and sexual assault to severely injured

arrestees dying at intake to pretrial detainees not receiving the necessary medical care to treat chronic health conditions.

5.    In 2024, the Riverside County Jails have continued to take the lives of pretrial detainees who are subjected to cruel and inhumane treatment by custody and medical staff.[1]

6.    Long before Clifford Mathews' death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Riverside County correctional facilities, including Cois M. Byrd Detention Center, Robert Presley Detention Center, Larry D. Smith Correctional Facility, John J. Benoit Detention Center and the Blythe Jail.

7.    The individuals named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the Riverside County correctional facilities through the long history of in-custody deaths; the inmate-on-inmate violence which permeated the jails; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP (OPx) (C.D. Cal.) (hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and protection of inmates; the warnings from neutrally-selected experts regarding the Riverside County Sheriff's Department's custody and medical staff's failures amounting to constitutional violations; a court ordered Consent Decree directing the Riverside County Sheriff's Department to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill the Riverside County Sheriff's

---

[1] Indeed, on April 22, 2024, RCSD Corrections Captain Alyssa Vernal sent an email to the corrections sergeants. The email was sent in response to Mr. Ramos and Mr. Price's 2024 in-custody deaths, and it served to admonish the sergeants for not complying with proper jail policies and procedures. The email read, in relevant part: "Sergeants, last week we had a suicide and last night an OD. In assisting in security checks and reviewing DVR, it has become obvious we are not keeping house or following the rules like we should be."

Department's obligations under the Eighth and Fourteenth Amendments; and through a voluntarily entered Settlement Agreement which required that the Riverside County Sheriff's Department remedy all of the deficiencies addressed in the *Gray* class action.

8. Despite this long history of complete disregard to inmate safety and protection, each of the individually named defendants in this lawsuit deliberately failed to take even modest actions to prevent in-custody deaths at the Riverside County correctional facilities. Thus, by the time Clifford Mathews was taken into custody and placed at the LDSCF, the jail was infested with endemic, ongoing and unabated risks of injury or death to inmates – risks which indeed resulted in Clifford Mathews' death on September 27, 2024.

## JURISDICTION AND VENUE

9. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and the laws and Constitution of the State of California. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

10. This Court has the authority to grant the requested declaratory relief pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57, including pursuant to the Court's inherent equitable powers.

11. Venue is proper within the Central District of California pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the events and omissions giving rise to Plaintiffs' claims occurred within this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES/PENDANT CLAIMS

12. Plaintiffs have complied with the California Tort Claims Act requirements with respect to their claims arising under state law.

13. With respect to the supplemental state claims, Plaintiffs request that his Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such

1  claims as they arise from the same facts and circumstances which underlie the federal

2  claims.

3  **<u>PARTIES</u>**

4  14.    Decedent Clifford Mathews (hereinafter also "Decedent") was a 47-year-

5  old loving father of five children, Clifford W. Mathews, Jr., Ceyleah W. Madonna

6  Clarice Mathews, Anthony Lawrence Trujillo, Michaela Roberta Trujillo, and L.A., a

7  minor. At the time of his death, he was a pretrial detainee who resided in the County

8  of Riverside, California. The claims made by Plaintiff ESTATE OF CLIFFORD W.

9  MATHEWS are brought by the successors in interest, CLIFFORD W. MATHEWS,

10 JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY

11 LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a

12 minor, by and through his Guardian Ad Litem, Erlinda Grant.

13 15.    Plaintiff Clifford W. Mathews, Jr., is and was, at all times relevant hereto,

14 a resident of the County of Riverside, and was the natural son of Decedent Clifford

15 W. Mathews. Plaintiff Clifford W. Mathews, Jr. was 22 years old when his father died

16 in custody. Plaintiff brings these claims California Code of Civil Procedure §§377.20

17 et seq. and 377.60 et seq., which provide for survival and wrongful death actions.

18 Plaintiff also brings his claims individually and on behalf of Decedent Clifford W.

19 Mathews on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution,

20 federal and state civil rights law and California law.

21 16.    Plaintiff Ceyleah W. Madonna Clarice Mathews, is and was, at all times

22 relevant hereto, a resident of the County of Riverside, and was the natural daughter of

23 Decedent Clifford W. Mathews. Plaintiff Ceyleah W. Madonna Clarice Mathews was

24 24 years old when her father died in custody. Plaintiff brings these claims California

25 Code of Civil Procedure §§377.20 et seq. and 377.60 et seq., which provide for

26 survival and wrongful death actions. Plaintiff also brings her claims individually and

27 on behalf of Decedent Clifford W. Mathews on the basis of 42 U.S.C. §§ 1983 and

28

1988, the United States Constitution, federal and state civil rights law and California law.

17.    Plaintiff Anthony Lawarence Trujillo, is and was, at all times relevant hereto, a resident of the County of Riverside, and was the natural son of Decedent Clifford W. Mathews. Plaintiff Anthony Lawarence Trujillo was 31 years old when his father died in custody. Plaintiff brings these claims California Code of Civil Procedure §§377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of Decedent Clifford W. Mathews on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

18.    Michaela Roberta Trujillo, is and was, at all times relevant hereto, a resident of the County of Riverside, and was the natural daughter of Decedent Clifford W. Mathews. Plaintiff Michaela Roberta Trujillo was 24 years old when her father died in custody. Plaintiff brings these claims California Code of Civil Procedure §§377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings her claims individually and on behalf of Decedent Clifford W. Mathews on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

19.    L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant, is and was, at all times relevant hereto, a resident of the County of Riverside, and was the natural son of Decedent Clifford W. Mathews. Plaintiff L.A. was 15 years old when his father died in custody. Plaintiff brings these claims California Code of Civil Procedure §§377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of Decedent Clifford W. Mathews on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law.

20.    Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY

SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including RCSD employees and the Correctional Health Services (hereinafter also "CHS") employees, complied with the laws and the Constitutions of the United States and of the State of California. Defendant COUNTY, through RCSD and CHS, is and was responsible for ensuring the protection and safety of all persons incarcerated at the RCSD correctional facilities, including the Cois M. Byrd Detention Center (hereinafter "CBDC"), Robert Presley Detention Center (hereinafter "RBDC"), Larry D. Smith Correctional Facility (hereinafter "LDSCF"), John J. Benoit Detention Center (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

21. Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails. As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

22. Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, and SHERIFF BIANCO will hereinafter be referred to as the COUNTY DEFENDANTS.

23.    Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

24.    The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs, who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and medical personnel employed by the RCSD and the COUNTY Correctional Health Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. On information and belief, DOES 1 through 10 were and still are residents of the County of Riverside, California. DOES 1 through 10 are sued in both their individual and official capacities.

25.    At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under the color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-10, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

26.    At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the

incident, DOES 9 and 10 were acting under the color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the RCSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

27. Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

28. Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Clifford Mathews' constitutional rights and other harm.

///

///

29.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

30.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

31.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

32.     On or about August 26, 2024, Decedent Clifford Mathews was arrested while hospitalized at San Gorgonio Memorial Hospital in Banning, California, and booked into the Riverside County Sheriff's Department, Larry D. Smith Correctional Facility, 1627 Hargrave Street, Banning, CA 92220.

33.     Upon information and belief, the RCSD custody staff and medical staff were aware Mr. Mathews suffered from hypertension and cardiovascular disease on or about August 26, 2024. As such, the RCSD custody staff and medical staff had ample notice that Mr. Mathews was suffering from a serious and life-threatening medical conditions, and yet were deliberately indifferent to his serious medical needs.

34.     Mr. Mathews experienced serious and life-threatening symptoms including chest pain, high blood pressure, vomiting, and respiratory failure, multiple times prior to his death.

35.     Despite these clear signs that Mr. Mathews was in dire need of medical care, including hospitalization and surgery, the RCSD custody staff and medical staff ignored him and failed to get him immediate medical attention by transferring him to a local emergency room, failed to provide any enhanced monitoring or supervision, and failed to alert medical providers, including a cardiologist and/or an emergency medicine physician, of Mr. Mathews' deteriorating health.

///

36.    Three (3) days after his initial arrest and booking, on August 29, 2024, Mr. Mathews was transported to the emergency department at Riverside University Health System (RUHS) due to persistent chest pain and vomiting.

37.    Mr. Mathews was again taken to Riverside University Health System (RUHS) on September 4, 2024 from jail with abdominal pain, nausea, and hypertension.

38.    On September 16, 2024, Mr. Mathews was taken to the emergency department at Riverside University Health System for chest pain, dizziness, and hypertension. He believed the dosage on his medication was not sufficient.

39.    On September 24, 2024, Mr. Mathews reported to jail staff that he was experiencing dizziness, and suddenly became unresponsive. The jail staff gave him Narcan. Mr. Mathews was taken to San Gorgonio Memorial Hospital where he was confused and vomiting en route. Upon arrival at the hospital, Mr. Mathews showed signs for rigid/posturing. He was intubated and transported to Riverside University Health System for further care. Mr. Mathews was subsequently admitted due to showing signs of ischemic changes.

40.    The following day, Mr. Mathews continued to be unresponsive, and his brain MRI was remarkable for ischemic stroke.  A CT scan showed an intracranial hemorrhage.

41.    On September 26, 2024, Mr. Mathews was released from custody for an unknown reason.

42.    A consultation for Mr. Mathews' prognosis occurred due to multiple acute ischemic infarcts, heart failure, and suspected brain injury. A decision had to be made by his family to remove him from life support.

43.    Due to the great delays on behalf of the LDSCF custody staff and medical staff in securing medical attention for Clifford Mathews, and the failures on behalf of the LDSCF custody staff in performing the required safety and welfare checks,

1    Clifford Mathews did not respond to medical intervention and was pronounced dead

2    at 7:05 p.m. on September 27, 2024.

3        44.    Clifford Mathews was only 48 years old when he died.

4        45.    Clifford Mathews was a pretrial detainee, and therefore, innocent until

5    proven guilty.

6        46.    Plaintiffs timely and properly filed tort claims with the County of

7    Riverside pursuant to California Government Code sections 910, *et seq*., and this

8    action is timely filed within all applicable statutes of limitation.

9        47.    This complaint may be pled in the alternative pursuant to Federal Rule

10   of Civil Procedure 8(d).

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

13       48.    Based upon the principles established in *Monell v. Dep't of Soc. Servs.*

14   *of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries

15   sustained by Plaintiffs as set forth herein. In *Monell v. Department of Social Servs*.,

16   436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that

17   municipalities were "persons" under § 1983 and thus could be held liable for causing

18   a constitutional deprivation.3 *Id*. at 690, 98 S.Ct. 2018. The Court explained that while

19   a municipality may not be held liable under § 1983 for the torts of its employees on a

20   theory of respondeat superior, liability may attach where the municipality *itself* causes

21   the constitutional violation through the execution of an official policy, practice or

22   custom. *Id*. At 690-691, 98 S.Ct. 2018.[2]

23       49.    To establish municipal liability under *Monell v. Dep't of Soc. Servs. Of*

24   *City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff]

25   possessed a constitutional right of which she was deprived; (2) that the municipality

26   had a policy/custom/practice; (3) that this policy/custom/practice amounts to

27

28   [2] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

**A. THE COUNTY Jails Experienced Their Deadliest Year in 2022.**

50.    In    2022,    Defendant    RIVERSIDE    COUNTY    SHERIFF'S DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths. Prior to 2022, Riverside County had not logged more than twelve (12) such deaths in any year since 2005.[3]

51.    Two years prior to Clifford Mathews death, there were eighteen (18) in-custody deaths within the COUNTY Jails during the 2022 calendar year:

        a. Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

        b. Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death: "Natural")

        c. Justin Kail (Date of Loss: May 17, 2022; Manner of Death: "Accident-Overdose")

        d. Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death: "Natural")

---

[3] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

  e. Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death: "Accident-Overdose") [4]

  f. Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death: "Accident-Overdose")

  g. Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death: "Natural")

  h. Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death: "Accident-Overdose")

  i. Abel Anthony Chacon (Date of Loss: August 25, 2022; Manner of Death: "Accident-Overdose")

  j. Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death: "Accident-Overdose")

  k. Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death: "Natural")

  l. Mario Solis (Date of Loss: September 3, 2022; Manner of Death: "Accident")[5]

  m. Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death: "Strangulation")[6]

  n. Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of Death: "Suicide/Hanging")

---

[4] Pretrial detainee Michael Vasquez was just 20 years old at the time of his death. He had been in the facility for only (6) six days prior to being exposed to the dangers and risks permeating the CBDC, all of which ultimately resulted in his death.

[5] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (i.e., cells intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap. Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this death as an "accident" in an effort to absolve themselves from liability arising from a suicidal pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide. What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.

[6] Decedent Kaushal Niroula was a transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender. Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

COMPLAINT FOR DAMAGES

o.  Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of Death: "Homicide Willful")[7]

p.  Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death: "Pending")

q.  Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

r.  Ronald Cook (Date of Loss: December 12, 2022 Manner of Death: "Pending")

52.    The deaths include six (6) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and three (3) pending.

53.    The Defendants' deliberate indifference towards protecting pretrial detainees from hazards resulted in illegal drugs permeating the COUNTY Jails. According to James Krachmer, Former Chief Deputy at Riverside County Sheriff's Office, from November 2021 through November 2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at least twice a week within the COUNTY Jails.[8]

54.    The Defendants' deliberate indifference towards pretrial detainees suffering from mental health issues resulted in several completed and attempted suicides. On November 23, 2022, pretrial detainee Charles Wall attempted suicide by jumping off the top tier of his housing module at RPDC. From November 19, 2022 through November 23, 2022, Mr. Wall made repeated requests for psychiatric care and medication. Mr. Wall suffered from schizophrenia and suicidal ideations, which was known to the COUNTY custody and medical staff given his prior attempts to

---

[7] Pretrial detainee Ulyses Munoz Ayala was brutally killed by a *known* violent inmate, Erik Martinez, whom he was forced to share a cell with. *See* "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

[8] *See* "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co. Sheriff Reacts" (Fox11 News, November 7, 2022), available at https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-2022-families-demand-answers

commit suicide at RPDC in 2015, as well as his extensive medical and mental health history. These requests were ignored by the custody and medical staff. On November 23, 2022, Mr. Wall pled with a custody staffer, begging for an opportunity to speak with a psychiatrist. The custody staffer demanded to know why Mr. Wall needed to speak with a psychiatrist. When Mr. Wall hesitated, the custody staffer shouted, "Do what you gotta do! Stop pushing my fucking buttons or you're gonna give me a reason to come in!" Shortly thereafter, Mr. Wall attempted suicide by jumping off the second story of his housing module.

**B. The COUNTY Jails Continued to Experience a Deadly Year in 2023.**

55. In 2023, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's COUNTY Jails continued to experience a deadly year:

    a. On January 12, 2023, pretrial detainee Mark Spratt died as a result of injuries he suffered during a brutal attack by his cellmate at CBDC. According to inmates who perceived the attack, Mr. Spratt was physically and sexually assaulted by his cellmate for an appreciable amount of time. At the conclusion of the assault, the cellmate proceeded to throw Mr. Spratt's body from the second tier of the housing module. Mr. Spratt was only 24 years old at the time of his death.

    b. On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell at RPDC. Upon information and belief, Mr. Viramontes' death was caused by hazards permeating the RPDC. Mr. Viramontes was only 26 years old at the time of his death.

    c. On February 6, 2023, pretrial detainee Jesus Rodriguez died in-custody due to injuries suffered during an arrest. An investigation into the manner and means of death remains pending.

    d. On February 21, 2023, pretrial detainee Christian Drye died in-custody at a COUNTY hospital due to injuries suffered during an

arrest. An investigation into the manner and means of death remains pending.

e.  On March 11, 2023, pretrial detainee Asher Saunders was found unresponsive in his cell at CBDC. Upon information and belief, the death was caused by hazards permeating the CBDC. An investigation into the manner and means of death remains pending.

f.  On May 26, 2023, pretrial detainee Ruben Guzman died following an undisclosed incident at JBDC. Upon information and belief, Mr. Guzman received numerous threats to his life by inmates and custody staff at the COUNTY Jails. Upon information and belief, Mr. Guzman was found unresponsive in a holding cell on May 22, 2023. He died four days later on May 26, 2023. While the RCSD's investigation into the manner and means of death remains pending, an independent autopsy evidenced blunt force trauma to Mr. Guzman's head and upper body.

g.  On July 5, 2023, Astrid Johnson, a 62-year-old ~~man~~ female inmate housed in the JBDC, died in-custody. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Ms. Johnson with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "natural."

h.  On August 14, 2023, Steven Crawford, 71-year-old pretrial detainee, was found unresponsive in his cell at JBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Crawford with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "natural."

i.  On August 27, 2023, Tavea Starks-Walker, a 31-year-old pretrial detainee, was found unresponsive in his cell at CBDC. Upon information and belief, Mr. Starks-Walker's death was caused by

1   hazards permeating the CBDC. An investigation into the manner and
2   means of death remains pending.

3   j.   On September 14, 2023, Tina Atchley, a 65-year-old pretrial detainee,
4        was found unresponsive in her cell. Upon information and belief,
5        RCSD personnel and CHS medical personnel failed to provide Ms.
6        Atchley with adequate medical care. Nonetheless, the RCSD reported
7        the manner of death to be "natural."

8   k.   On September 14, 2023, Damon Beitz, a 46-year-old pretrial detainee,
9        was found unresponsive in the intake area at RPDC. Hours prior to
10       being found unresponsive, Mr. Beitz had been arrested by police
11       officers from the Riverside Police Department. Upon information and
12       belief, Mr. Beitz was physically assaulted by the Riverside Police
13       Department police officers causing severe injuries to his person. Upon
14       information and belief, Mr. Beitz's succumbed to those injuries while
15       in-custody at the RPDC intake area due to the arresting police officers
16       failing to provide Mr. Beitz with medical care, and due to the RCSD
17       custody personnel and CHS medical personnel being deliberately
18       indifferent towards Mr. Beitz obvious physical injuries. Nonetheless,
19       the RCSD reported the manner of death to be "drug overdose."

20  l.   On September 18, 2023, Jess Flores, a 46-year-old pretrial detainee,
21       was found unresponsive in his cell at CBDC. Upon information and
22       belief, RCSD personnel and CHS medical personnel failed to provide
23       Mr. Flores with adequate medical care. Nonetheless, the RCSD
24       reported the manner of death to be "natural."

25  m.   On November 4, 2023, Charles Giurbino, a 58-year-old pretrial
26       detainee, was found unresponsive in the intake area of CBDC. Upon
27       information and belief, RCSD personnel and CHS medical personnel

28

1    failed to provide Mr. Giurbino with adequate medical care.
2    Nonetheless, the RCSD reported the manner of death to be "pending."

3    n. On December 13, 2023, Luke Hanchette, a 44-year-old pretrial
4    detainee, was found unresponsive in his cell at RCSD. Upon
5    information and belief, RCSD personnel and CHS medical personnel
6    failed to provide Mr. Hanchette with adequate medical care.
7    Nonetheless, the RCSD reported the manner of death to be "pending."

8    o. On December 15, 2023, Shaundale Booker, a 21-year-old pretrial
9    detainee, was found unresponsive in his cell at RCSD. Upon
10    information and belief, RCSD personnel and CHS medical personnel
11    failed to provide Mr. Booker with adequate medical care.
12    Nonetheless, the RCSD reported the manner of death to be "pending."

13    p. On December 17, 2023, Heather Hendy, a 29-year-old pretrial
14    detainee, was found unresponsive in her cell at RCSD. Upon
15    information and belief, RCSD personnel and CHS medical personnel
16    failed to provide Ms. Hendy with adequate medical care. Nonetheless,
17    the RCSD reported the manner of death to be "pending."

18    **C. In 2024, the COUNTY Jails Have Continued to Experience In-Custody**
19    **Death Resulting from Egregious Failures on Behalf of the RCSD**
20    **Custody Staff and the CHS Medical Staff.**

21    56.    In 2024, the COUNTY Jails have continued to take the lives of pretrial
22    detainees who are subjected to cruel and inhumane treatment by RCSD custody staff
23    and CHS medical staff:

24    a. On January 9, 2024, Richard Contreras, a 44-year-old pretrial
25    detainee, succumbed to brain injuries in the hospital following a
26    gruesome attack by his cellmate. Upon information and belief, Mr.
27    Contreras had been physically assaulted by the same cellmate days
28    prior and taken to the hospital. Upon returning to the RCSD from the

hospital, Mr. Contreras was housed in the same cell with the same violent cellmate resulting in his death. Despite the RCSD custody personnel's deliberate failures in protecting Mr. Contreras from the violent inmate, the RCSD reported the manner of death to be "pending."

b.  On April 16, 2024, Reynold Ramos, a 55-year-old pretrial detainee, was found unresponsive in his cell at the RPDC. Upon information and belief, an inmate observed Mr. Ramos fashioning a noose in an attempt to hang himself. The inmate proceeded to utilize the cell intercom to get the custody staff's attention, however, the custody staff ignored the intercom calls. Mr. Ramos was found 45 minutes later hanging from the noose. Nonetheless, the RCSD reported the manner of death to be "pending."

c.  On April 19, 2024,[9] Mack Price, a 53-year-old pretrial detainee, was found unresponsive in his cell at CBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide Mr. Price with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "pending."

d.  On August 18, 2024, an unidentified 41-year-old male pretrial detainee was found unresponsive in a sobering cell at the CBDC. Upon information and belief, RCSD personnel and CHS medical personnel failed to provide the detainee with adequate medical care. Nonetheless, the RCSD reported the manner of death to be "pending."

57.     Furthermore, the Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the

[9] Indeed, on April 22, 2024, RPDC Corrections Captain Alyssa Vernal sent an email to the RPDC sergeants. The email was sent in response to Mr. Ramos and Mr. Price's in-custody deaths, and it served to admonish the RPDC sergeants for not complying with proper jail policies and procedures. The email read, in relevant part: "Sergeants, last week we had a suicide and last night an OD. In assisting in security checks and reviewing DVR, it has become obvious we are not keeping house or following the rules we should be."

COUNTY Jails. Upon information and belief, this indifference has resulted in the 2022-2024 deaths of Kaushal Niroula, Ulyses Munoz Ayala, Mark Spratt, Ruben Guzman and Richard Contreras, and the brutal sexual assault of a pretrial detainee in April of 2023 at the COUNTY Jails.

### D. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.

58.    Despite the record-breaking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California Government Code section 12525[10] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[11]

59.    The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

60.    The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate.[12]

61.    The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners.[13] Upon information and belief, this

---

[10] *See* Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[11] *See* Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[12] *See* "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed-report-inmate-deaths-state-time/8017820001/

[13] *Id.*

orchestrated misclassification of the pretrial status of the decedents was done purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.[14]

### E. California Department of Justice Launched Patterns and Practices Investigation into Record Breaking In-Custody Deaths at the COUNTY Jails.

62.     On February 23, 2023, the California Department of Justice (DOJ) announced its decision to launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately affecting Latino and African American communities.[15] The raw data and the per capita data make clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have died just days after being booked.[16] For reference, San Diego County had 19 in-custody deaths in 2022, despite an average daily jail population of 500 more people than Riverside County.

63.     During the press conference, the California Attorney General Rob Bonta expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY

---

[14] Pretrial detainees are perceived as innocent under the eyes of the law. Because they are mere detainees who are simply awaiting their day in court, the Constitution mandates that additional protective measures be put in place to ensure that the detainees are not harmed while in the government's custody. More specifically, the 14th Amendment requires that correctional facilities not be deliberately indifferent towards the detainees' safety and protection. *See Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018). Once an inmate has been convicted of a crime, they are deemed to be a post-conviction prisoner. While the Constitution too protects post-conviction prisoners, the 8th Amendment merely requires that the prisoners not be subjected to cruel and unusual punishment while in the government's custody. See *Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). The end result is that the legal standard under which a civil rights lawsuit is premised upon is much higher and more difficult to prove for a post-conviction prisoner (i.e., subjective standard) rather than a pretrial detainee (i.e., objective standard). Upon information and belief, the COUNTY DEFENDANTS purposely classified the pretrial detainees as inmates who had already been "sentenced" in an effort to make it merely impossible for the families to establish liability because of the heightened standard of culpability imposed on civil rights cases filed by post-conviction prisoners.
[15] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county
[16] *Id.*

SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the institutions that serve them […]. When some communities don't see or feel they are being treated equitably by law enforcement, it contributes to distrust and hurts public safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths and allegations of misconduct — too many families and communities in Riverside County are hurting and looking for answers. As part of my office's ongoing efforts to support constitutional policing, the California Department of Justice is opening a civil rights investigation into the Riverside County Sheriff's Office. Whether you have a loved one in jail or are worried about crime in your neighborhood, we all benefit when there is action to ensure the integrity of policing in our state."

64.    In response to the California Department of Justice's civil rights investigation in the COUNTY Jails, SHERIFF BIANCO issued the following offensive statement illustrating indifference towards the lives lost in his jails: "This investigation is based on nothing but false, and misleading statements, and straight-out lies from activists, including their attorneys. This will prove to be a complete waste of time and resources."[17]

## F. RCSD's History of Indifference Towards Inmates Incarcerated at the COUNTY Jails.

65.    For well over a decade now, the COUNTY's own Grand Jury, as well as several independent auditors, have come to the same conclusion: dangerous deficits in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

66.    The "2010-11 Grand Jury Report: Riverside County Detention Health Care Administration" found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas.[18]

---

[17] See Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at https://www.youtube.com/watch?v=6ttMVVLyfaQ
[18] See 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/20102011/11mentalhealth_detentionserv.pdf

67.     The Grand Jury released an updated report in June 2012, noting that mental health staffing had in fact decreased since its prior year's report.[19]

68.     On March 8, 2023, the federal class action lawsuit Quinton Gray, et al. v. County of Riverside, case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The class action also alleged discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

69.     The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

> a. RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;
>
> b. RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to establish legally required confidentiality, and to identify and correct its own failings;
>
> c. RCSD, by policy and practice, maintains and runs substandard medication management and administration;
>
> d. RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

---

[19] *See* 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/20112012/12mentalhealthdetention.pdf

e. RCSD, by policy and practice, maintains and runs substandard medication management and administration;

f. RCSD, by policy and practice, provides substandard mental health care to inmates.

70. On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

71. On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the United States Constitution.

72. On July 15, 2015, the neutrally-appointed experts issued reports, determining that the health care failed to meet the constitutional minimum. As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

73. Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the Gray Class Action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

**G. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating his COUNTY Jails.**

74. A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held

that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id*. at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id*. "We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Id*.

75.    The endemic, ongoing and unabated risks of injury or death to inmates incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long been aware of these risks and harms which have resulted in injury and death to inmates incarcerated in his COUNTY Jails. SHERIFF BIANCO's failure to take action to ameliorate these conditions constitutes deliberate indifference to the safety and health of inmates incarcerated in his COUNTY Jails.

76.    SHERIFF BIANCO has made several public statements all of which serve as illustrations of his great indifference towards the inmates, most of whom are pretrial detainees and innocent under the eyes of the law, who are in the government's custody in his COUNTY Jails.

77.    Despite the alarming trends in overdoses and in-custody deaths, SHERIFF BIANCO blames the decedents and their families for the in-custody deaths and overdoses in the COUNTY Jails – all of which are fully controlled and managed by him.

78.    On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail

publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died.[20]

79.     Within fourteen hours of the article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families and their deceased love ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:[21]

(1) Did they demand that their family members not commit suicide or consume drugs while they were in custody?

(2) Did they ever demand that their family members not commit crimes in the first place?



---

[20] *See* "Sheriff Explains How 13 Riverside County Inmates Died This Year" (The Press-Enterprise Facebook Page, September 16, 2022), available at: https://www.facebook.com/page/50855317267/search/?q=chad%20bianco%2013%20riverside%20county%20inmates%20died

[21] Notably, SHERIFF BIANCO deleted the post thereafter. SHERIFF BIANCO did this despite the post being highly relevant and material to Plaintiffs' supervisorial claims against him. This is textbook definition of spoliation. Courts generally agree that the duty to preserve is triggered as soon as a potential claim is identified. *Apple Inc. v. Samsung Electronics Co*., Ltd., 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation"); *Colonies Partners, L.P. v. County of San Bernardino*, 2020 WL 1496444, at *6-7 (C.D. Cal. 2020), report and recommendation adopted, 2020 WL 1491339 (C.D. Cal. 2020). Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence, in pending or future litigation." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir.2009); see also *Leon v. IDX Systems Corp*., 464 F.3d 951, 959, (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'").

(3) Did their parents ever demand they take responsibility for their own actions?

(4) Do they ever think they played a huge part in the situation they find themselves in, other than the personal actions of their deceased loved one?

80.    SHERIFF BIANCO also blames the inmates themselves: "There are inmates that purposely get arrested just to smuggle drugs into jail. It is either for money, money on the outside, money or favor on the inside [. . .] It's part of that culture of power inside the jails, and drugs are a part of it."[22]

81.    In response to the Department of Justice's recent announcement about its decision to investigate the patterns and practices existing within the COUNTY Jails, SHERIFF BIANCO expressed the following indifference towards pretrial detainees dying at alarming rates within his COUNTY Jails: "Of course I'm not happy, this is going to waste our time. Every single one of these inmate deaths was out of anyone's control. The fact of the matter is that they just happened to be in our custody."[23]

82.    Interestingly, SHERIFF BIANCO has taken this hardline (and insulting) position when asked about fentanyl overdoes in his jails. Yet, upon information and belief, SHERIFF BIANCO is currently being investigated by the Federal Bureau of Investigation ("FBI") for his interference with a murder investigation arising from two fentanyl overdoses in the City of Riverside which occurred on February 21, 2022 before many of the fentanyl overdoes in COUNTY Jails.

83.    On February 21, 2022, 22-year-old Sierra Riane Rangel and 21-year-old Arrena Marie Mariotti died from fentanyl overdoses.[24]

///

///

---

[22] See "California Jails Are Trying to Keep Fentanyl Out, But Inmates Are Still Dying. In Riverside County, Fentanyl is Blamed in 38% of In-custody Deaths So Far This Year," (Mercury News, September 26, 2022), available at: https://www.mercurynews.com/2022/09/26/southern-california-jails-trying-to-keep-fentanyl-out-but-inmates-are-still-dying/

[23] See "Kudos to Bonta for Investigating the Sheriff. Let's Hope He Moves Quickly" (The Desert Sun, March 5, 2023), available at https://www.desertsun.com/story/opinion/editorials/2023/03/05/kudos-to-bonta-for-investigating-riverside-county-sheriffs-department/69967829007/

[24] See "Man Charged with Murder After 2 Riverside Woman Died from Fentanyl Overdoses," (The Press-Enterprise, April 28, 2022), available at https://www.pressenterprise.com/2022/04/28/man-charged-with-murder-after-2-riverside-women-died-from-fentanyl-overdoses/

84.    On February 24, 2022, murder charges were filed against Peter Luis Mera Garcia.[25] Upon information and belief, Peter Luis Mera Garcia is the son of a senior level deputy at RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. Notably, the criminal case received wide public attention as this was the first time in the COUNTY OF RIVERSIDE that a person had been charged with murder due to a fentanyl death.

85.    Upon information and belief, the Riverside Police Department ("RPD") Special Weapons and Tactics ("SWAT") was charged with executing the search warrant of suspect Peter Luis Mera Garcia's home.

86.    Upon information and belief, suspect Peter Mera Garcia lived with his parents, including his father who was a senior level deputy employed by the RIVERSIDE COUNTY SHERIFF'S DEPARTMENT.

87.    Upon information and belief, Former RPD Sergeant, Frank Hoyos, was one of the SWAT Team members assigned to execute the search warrant.

88.    Upon information and belief, prior to the execution of the search warrant, RPD Chief of Police Larry Gonzalez was called by SHERIFF BIANCO for a favor. SHERIFF BIANCO asked Chief Gonzalez to provide him with the name of the RCSD senior level deputy.

89.    Upon information and belief, RPD Chief Gonzalez proceeded to call RPD Sergeant Jimmy Simmons, who had no involvement with the investigation of this double homicide. RPD Chief Gonzalez informed Sgt. Simmons that he was calling him because SHERIFF BIANCO wanted to know the name of his deputy whose son had been booked. RPD Chief Gonzalez tasked Sgt. Simmons with the assignment of finding out the name for SHERIFF BIANCO.

90.    Upon information and belief, RPD Sgt. Simmons secured the name of the RCSD senior deputy and relayed the name to RPD Chief Gonzalez.

91.    Upon information and belief RPD Chief Gonzalez then relayed the name to SHERIFF BIANCO.

---

[25] *Id.*

COMPLAINT FOR DAMAGES

92.    Upon information and belief, SHERIFF BIANCO then alerted his senior level deputy that the RPD SWAT Team would be executing the search warrant on a specific date and time and looking for very specific evidence in his home.

93.    Upon information and belief, the RCSD Senior Level Deputy convened with his son, suspect Peter Luis Mera Garcia, and together they ensured that when the RPD SWAT Team arrived at their home, they would find zero traces of a crime.

94.    Upon information and belief, when the RPD SWAT Team executed the search warrant during the early morning hours, the SWAT Team was greeted by the RCSD Senior Level Deputy who welcomed the SWAT Team into his home. Indeed, no evidence of a crime was found.

95.    Clearly, SHERIFF BIANCO is personally responsible for the fentanyl crisis in RIVERSIDE COUNTY and has intentionally refused to make adequate measures within his jail to prevent individuals from dying from fentanyl.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

### (Against individual Defendant SHERIFF CHAD BIANCO and DOES 1-10)

96.    Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

97.    Long before Clifford Mathews' death, Defendants SHERIFF CHAD BIANCO, and DOES 1 through 10 knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

98.    Defendants SHERIFF CHAD BIANCO and DOES 1 through 10 were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; inmate-on-inmate violence; the federal class action *Quinton Gray, et al. v. County of Riverside*, case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S

DEPARTMENT's custody and medical staff's deliberate indifference towards the safety and protection of inmates; the warnings from the neutrally-selected experts regarding failures amounting to constitutional violations; a Consent Decree directing Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill its obligations under the Eighth and Fourteenth Amendments; and through a Settlement Agreement which the COUNTY voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT remedy all of the deficiencies in healthcare and disability accommodations alleged in the *Gray* Class Action complaint.

99.    Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF CHAD BIANCO, and DOES 1 through 10 have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

100.    The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

<u>**FIRST CAUSE OF ACTION**</u>

**Failure to Protect from Harm, Violation of Fourteenth Amendment to the**

**United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff Estate of Clifford Mathews**

**As Against Defendants DOES 1 through 10**

101.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

102.    Pretrial detainees such as Clifford Mathews have a Fourteenth Amendment due process right to be free from harm. See *Castro v. County of Los*

*Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).

103.   Upon information and belief, on September 24, 2024, Defendants DOES 1 through 10, and each of them, made the intentional decision to place Clifford Mathews in a condition of confinement which significantly exposed him to the risk of harm which ultimately caused Clifford Mathews' death.

104.   Indeed, well before September 24, 2024, Defendants DOES 1 through 10, had express knowledge concerning the conditions of confinement which could cause death or seriously harm inmates such as Clifford Mathews and place Clifford Mathews at substantial risk of suffering serious harm. However, Defendants DOES 1 through 10, did not take reasonable available measures to abate or reduce that risk, even though any reasonable person in such circumstances would have appreciated the high degree of risk involved. It was clear that the consequence of not abating or reducing such risks would entail death which was obvious under the circumstances. Clearly, by not taking such measures, Defendants DOES 1 through 10, caused Clifford Mathews' death.

105.   Defendants DOES 1 through 10 failed to conduct proper and timely Title 15 welfare and safety checks, thereby authorizing, permitting, and/or encouraging a correctional environment that posed a substantial risk to the health and safety of inmates who suffered from life threatening conditions like Clifford Mathews. Because of these Defendants' deliberate conduct, Clifford Mathews died on September 27, 2024.

106.   Due to the great delays in securing adequate emergency medical attention for Clifford Mathews, and the wrongful and deliberate conduct on behalf of Defendants DOES 1 through 10 of failing to adequately monitor and supervise inmates through the use of surveillance cameras to ensure that a medical emergency does not go unnoticed and is attended to in a timely manner; and failing to perform

1    the required safety and welfare checks, Clifford Mathews did not respond to medical
2    intervention and died on September 27, 2024.

3        107.    Defendants, COUNTY, RCSD, DOES 1 through 10 were on notice that
4    their deficient policies, procedures, and practices alleged herein created substantial
5    risk of serious harm to an inmate in decedent Clifford Mathews' position.

6        108.    Each Defendant could have taken action to prevent unnecessary harm to
7    decedent Clifford Mathews but refused or failed to do so.

8        109.    By policy, procedure, and practice, Defendants COUNTY, RCSD,
9    DOES 1 through 10 deliberately disregarded the risks posed to persons incarcerated
10    at the LDSCF, as alleged above. Defendants failed to take any reasonable steps to
11    mitigate the obvious and well-known risks of harm that was attendant to housing
12    decedent Clifford Mathews at LDSCF.

13        110.    Defendants including SHERIFF BIANCO, and DOES 8 through 10 also
14    knew that deputies routinely failed to conduct required welfare and safety checks at
15    the COUNTY Jails, including LDSCF, and failed to take sufficient actions to correct
16    this problem and ensure that necessary checks were performed.

17        111.    Defendant SHERIFF BIANCO failed to take corrective action,
18    discipline, or remove the command staff at the COUNTY Jails, including LDSCF,
19    who, upon information and belief, directed the deputies to falsify safety check logs
20    and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO
21    ratified their actions, and the practices used under his watch.

22        112.    Defendants COUNTY, RCSD, and DOES 1 through 10 were on notice
23    that their policies, procedures, and practices for monitoring inmates at the COUNTY
24    Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious
25    harm.

26        113.    Defendants including SHERIFF BIANCO and DOES 8 through 10 failed
27    to properly train and supervise RCSD custody and medical staff regarding policies,

28

procedures, and practices necessary for the protection of inmates from risks and hazards existing within the COUNTY Jails, including LDSCF.

114. Defendants including SHERIFF BIANCO and DOES 8 through 10's failure to correct their policies, procedures, and practices despite notice of significant and dangerous problems evidences deliberate indifference to the inmates in their care.

115. Defendants SHERIFF BIANCO and DOES 8 through 10 ratified Defendants DOES' actions and inactions amounting to constitutional violations.

116. Defendants DOES 1 through 10's failure to conduct the required safety check of decedent Clifford Mathews' housing unit on the date of his hospitalization evidences deliberate indifference to the risk of harm to decedent Clifford Mathews.

117. Defendants SHERIFF BIANCO and DOES 8 through 10 ratified Defendants DOES' failure to conduct safety checks and falsification of logs.

118. As a direct and proximate result of Defendants' conduct, the civil right of Clifford Mathews, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent Clifford Mathews experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

119. Defendants subjected decedent Clifford Mathews to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

120. As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiffs herein, sustained injuries and damages.

121. The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendant COUNTY.

122. Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**SECOND CAUSE OF ACTION**

**Failure to Provide Medical Care, Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983) By Plaintiff Estate of Clifford Mathews As Against Defendants DOES 1 through 10**

151.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

152.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Clifford Mathews through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to Clifford Mathews' serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

153.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Clifford Mathews with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical care and life saving care to persons in their custody, constituted deliberate indifference to Clifford Mathews' serious medical needs, health, and safety.

154.   As a direct and proximate result of Defendants' conduct, the civil rights of Clifford Mathews, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent Clifford Mathews experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

155.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and

reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

156.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

157.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

158.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C § 1983)**

**By Plaintiff Estate of Clifford Mathews**

**As Against Defendants DOES 1 through 10**

159.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

160.   The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent Clifford Mathews' protection, safety, and serious medical needs, violating decedent Clifford Mathews' constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Clifford Mathews deprived Plaintiffs CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant of their liberty interests in the parent-child relationship violation of their substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

161.   All of the acts of Defendants DOES 1 through 10 and the persons involved were done under color of state law.

162.   The acts and omissions of each Defendant deprived Plaintiffs CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiff of their rights to a parent-child relationship with decedent Clifford Mathews without due process of law by their deliberate indifference in denying Clifford Mathews protection and safety while incarcerated at LDSCF and access to medical care while suffering a medical emergency at LDSCF.

163.   Defendants DOES 1 through 10 and the other involved agents and employees acted pursuant to expressly adopted official policies or longstanding practices or customs of the COUNTY and RCSD. These include policies and longstanding practices or customs of failing to provide persons in pretrial custody who are experiencing medical emergencies access to medical care as stated above and incorporated herein.

164.   In addition, the training policies of the COUNTY and RCSD were not adequate to train its deputies, agents and employees to handle the usual and recurring situations with which they must deal with, including but not limited to encounters with individuals in pretrial custody who are experiencing medical emergencies. These Defendants and each of them knew that its failure to adequately train its COUNTY Jails custody and medical staff, including other agents and employees, to interact with individuals suffering from medical emergencies made it highly predictable that its custody and medical staff would engage in conduct that would deprive persons such as decedent Clifford Mathews, and thus Plaintiffs CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE

TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant of their rights. These Defendants were thus deliberately indifferent to the obvious consequences of their failure to train their deputies, agents and employees adequately.

165.    Defendants COUNTY and RCSD's official policies and/or longstanding practices or customs, including but not limited to its training policies, caused the deprivation of the constitutional rights of Plaintiffs CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant and decedent Clifford Mathews by each individual Defendant's official policies and/or longstanding practices or customs are closely related to Clifford Mathews' injuries and death and thus the deprivation of the rights of Plaintiffs as to be the moving force causing those injuries.

166.    Defendant SHERIFF BIANCO, a final policymaker for the COUNTY and RCSD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody and medical staff at the COUNTY Jails, including LDSCF, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

167.    As direct and proximate result of Defendants' conduct, the civil rights of Clifford Mathews, as protected by the Fourteenth Amendment of the United States Constitution were violated. Further, decedent Clifford Mathews experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

168.    Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

///

169.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

170.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

171.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## FOURTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations (*Monell* – 42 U.S.C. § 1983) By Plaintiff Estate of Clifford Mathews As Against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**

172.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

173.   In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that municipalities were "persons" under § 1983 and thus could be held liable for causing a constitutional deprivation. *Id*. at 690, 98 S.Ct. 2018. The Court explained that while a municipality may not be held liable under § 1983 for the torts of its employees on a theory of respondeat superior, liability may attach where the municipality itself causes the constitutional violation through the execution of an official policy, practice or custom. *Id*. at 690– 691, 98 S.Ct. 2018.[26]

174.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY

---

[26] *See Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002) ("These alleged constitutional deprivations were not suffered as a result of actions of the individual officers, but as a result of the collective inaction of the Long Beach Police Department.").

and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

    a. To pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

    b. To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Riverside's written policies and state law;

    c. To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

    d. To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

    e. To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

    f. To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

    g. To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

h. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

i. To cover up violations of constitutional rights by any or all of the following:

    i. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

    ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

    iii. By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Riverside County jails; and

    iv. By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

j. To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, RCSD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the RCSD, or medical staff does not provide adverse information against a fellow officer, or member of the RCSD or the medical staff;

k. To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in

the face of an obvious need for such policies, procedures, and training programs.

175.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO:

    a.    To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

    b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

    c.    To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

    d.    To cover up violations of constitutional rights by any or all of the following:

        i.    By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

        ii.    By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

        iii.    By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of

unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.  To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.  To allow tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.  To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

176.  Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of decedent Clifford Mathews, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

177.  The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other RCSD custody and medical staff, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and RCSD, and that

such policymakers have direct knowledge of the fact that the death of Clifford Mathews was the result of deliberate indifference to his rights to be protected and safe while in the custody of the COUNTY/RCSD, and his rights to have access to medical care when suffering a medical emergency. Notwithstanding this knowledge, the authorized policymakers within the COUNTY and RCSD have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Clifford Mathews. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO and DOES 8 through 10, and other policy-making officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury caused by COUNTY Jails custody and medical staff similar to the conduct of Defendants described herein, but failed to discipline culpable custody and medical staff and failed to institute new procedures and policy within the COUNTY and RCSD.

178.  The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants COUNTY and RCSD were a moving force and/or a proximate cause of the deprivations of decedent Clifford Mathews' clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983. Defendants subjected decedent Clifford Mathews to their wrongful conduct, depriving decedent Clifford Mathews of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Clifford Mathews, Plaintiffs and others would be violated by their acts and/or omissions.

179. As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants COUNTY and RCSD, as described above, decedent Clifford Mathews suffered serious injuries and death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against Defendants COUNTY and RCSD.

### FIFTH CAUSE OF ACTION

**Supervisory Liability Causing Constitutional Violations, (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983) By Plaintiff Estate of Clifford Mathews As Against Defendants SHERIFF CHAD BIANCO and DOES 8 through 10**

180. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

181. At all material times, SHERIFF BIANCO and DOES 8 through 10 the duty and responsibility to constitutionally hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the other Defendants employed by their respective agencies in this matter, as well as all employees and agents of the COUNTY and RCSD.

182. Defendants SHERIFF BIANCO and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline the respective employees of their agencies, including Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to Plaintiffs', decedent Clifford Mathews', and others' constitutional rights, which were thereby violated as described above.

183. As supervisors, Defendants SHERIFF BIANCO and DOES 8 through 10 each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at LDSCF and the rights to the serious medical needs of decedent Clifford

Mathews. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Clifford Mathews of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Clifford Mathews of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Clifford Mathews' rights, and in fact did cause the violation of decedent Clifford Mathews' rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Clifford Mathews' rights.

184.  The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Clifford Mathews', and others' constitutional rights, which were thereby violated as described above.

185.  The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Clifford Mathews was not justified or necessary, but represented deliberate indifference to  his rights to be protected and safe while in the COUNTY's custody and his rights to his serious medical needs, as set forth above. Notwithstanding this

knowledge, on information and belief, Defendants SHERIFF BIANCO and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Clifford Mathews. By so doing, Defendants SHERIFF BIANCO and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO and DOES 8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

186.    The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Clifford Mathews' clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

187.    Defendants subjected decedent Clifford Mathews to their wrongful conduct, depriving decedent Clifford Mathews of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Clifford Mathews and others would be violated by their acts and/or omissions.

188.    As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF

BIANCO and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

## SIXTH CAUSE OF ACTION

### Negligence – Wrongful Death

**Plaintiffs CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant As Against All Defendants**

189.  Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

190.  At all times, Defendants DOES 1 through 10 owed Plaintiffs and decedent Clifford Mathews the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

191.  At all times, these Defendants owed Plaintiffs and decedent Clifford Mathews the duty to act with reasonable care.

192.  These general duties of reasonable care and due care owed to Plaintiffs and decedent Clifford Mathews by these Defendants include but are not limited to the following specific obligations:

a.  To summon, or transport Decedent to, necessary and appropriate emergency medical care;

b.  To refrain from unreasonably creating danger or increasing Decedent's risk of harm;

c.  To use generally accepted law enforcement procedures and tactics that are reasonable and appropriate for Decedent's status as a person in medical crisis with serious medical needs;

d.  To conduct state mandated safety and welfare checks of inmates in the custody of the COUNTY jails;

e.  To refrain from abusing their authority granted them by law; and

f.  To refrain from violating Plaintiffs' and Decedent's rights as guaranteed by the United States and California Constitutions, as set forth above, and as otherwise protected by law.

193.  Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Clifford Mathews.

194.  Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

195.  As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Clifford Mathews sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

## SEVENTH CAUSE OF ACTION

### Medical Negligence

### Plaintiff Estate of Clifford Mathews As Against All Defendants

196.  Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

197.  Decedent Clifford Mathews was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including CBDC, who were required to examine, treat, monitor, prescribe for and care for him and to provide him with medical attention when he suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Clifford Mathews to specialist medical care providers; negligently failed to provide physician care; carelessly failed to detect, monitor, and follow-up

with his condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Clifford Mathews.

198.    Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Clifford Mathews emergency medical care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Clifford Mathews was provided.

199.    As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and against these Defendants, and each of them, are entitled to compensatory damages and as applicable to this claim for Medical Negligence, to be proven at time of trial.

200.    Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

## EIGHTH CAUSE OF ACTION

### Violation of California Government Code § 845.6

### Plaintiff Estate of Clifford Mathews As Against All Defendants

201.    Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

202.    Defendants DOES 1 through 10 was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and RCSD, knowing and/or having reason to know of decedent Clifford Mathews' need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

203.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

204.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent Clifford Mathews was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code §52.1

### (Tom Bane Act – Survival Action)

### Plaintiff Estate of Clifford Mathews As Against All Defendants

205.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

206.   Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

207.   By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Clifford Mathews was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Clifford Mathews' rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

a.   The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

b.     The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

c.     The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

d.     The right to emergency medical care as required by California Government Code §845.6.

208.    Defendants' violations of decedent Clifford Mathews' due process rights with deliberate indifference, in and of themselves constitute violations of the Bane Act.[27] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Clifford Mathews' rights as described above, Defendants violated Clifford Mathews' rights by the following conduct constituting threat, intimidation, or coercion:

a.     With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for his medical needs;

b.     With deliberate indifference to hazards that posed a risk to pretrial detainees, such as Decedent;

c.     Subjecting Decedent to ongoing violations of his rights to prompt care for his serious medical needs over days, causing immense and needless suffering, intimidation, coercion, and threats to his life and well-being;

---

[27] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

COMPLAINT FOR DAMAGES

d.     Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Riverside County jail detainees and inmates;

e.     Requiring medical staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

f.     Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

209.   The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Clifford Mathews' rights, or to any legitimate and lawful jail or law enforcement activity.

210.   Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

211.   Further, each Defendant violated decedent Clifford Mathews' rights reckless disregard and with the specific intent and purpose to deprive him of his enjoyment of those rights and of the interests protected by those rights.

212.   Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

213.   As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Clifford Mathews' rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## **TENTH CAUSE OF ACTION**

### **Declaratory Relief**

### **(28 U.S.C. § 2201)**

### **Plaintiffs As Against All Defendants**

223.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

224.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

225.   Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.   Wrongful death of Clifford Mathews, pursuant to Cal. Code of Civ. Proc. § 377.60, *et. seq*.;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60, et. seq.;

C.   Clifford Mathews' coroner's fees, funeral and burial expenses, pursuant Cal. Code of Civ. Proc. § 377.20, *et. seq*.;

D.   Violation of Clifford Mathews' constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20, et. seq. and federal civil rights law;

E.   Clifford Mathews' loss of life, pursuant to federal civil rights law;

F.   Clifford Mathews' conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.    General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.    Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.    Punitive damages as to individual peace officer defendants;

J.    Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.    A multiplier of damages, including treble damages, and penalties under the Tom Bane Act;

L.    Interest; and

M.    All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20, et seq., 377.60, et seq., and 1021.5; California Civil Code §§ 52, et seq., 52.1; and as otherwise may be allowed by California and/or federal law.

DATED: September 3, 2025                    Respectfully submitted,

WALTER CLARK LEGAL GROUP

By: */s/ Dan C. Bolton*
       Dan C. Bolton
       Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs ESTATE OF CLIFFORD W. MATHEWS, by and through successors in interest, CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant; CLIFFORD W. MATHEWS, JR., CEYLEAH W. MADONNA CLARICE MATHEWS, ANTHONY LAWARENCE TRUJILLO, MICHAELA ROBERTA TRUJILLO, and L.A., a minor, by and through his Guardian Ad Litem, Erlinda Grant, individually hereby make a demand for a jury trial in this action.

WALTER CLARK LEGAL GROUP

By: */s/ Dan C. Bolton*
    Dan C. Bolton
    Attorneys for Plaintiffs